8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBIN LEE HOFFMAN,                    No.  2:14-cv-2736 MCE KJN P

12           Plaintiff,

13       v.                               ORDER AND FINDINGS AND
                                          RECOMMENDATIONS
14   JUSTIN JOURDAN, et al.,

15           Defendants.

16

17   I.  Introduction

18          Plaintiff is proceeding without counsel.  Plaintiff alleges that on December 12, 2013,

19   defendants Jourdan, Hill, and Bassett, Officers of the City of Corning, used excessive force

20   during an incident when the officers broke down plaintiff's motel door, and caused her physical

21   injuries, allegedly in violation of the Fourth Amendment.  Plaintiff also alleges that defendant

22   Fears, another Corning Officer, stood by and failed to protect plaintiff.  In addition, plaintiff

23   raises Fourth Amendment claims against defendants for unlawful detention, false arrest/false

24   imprisonment, and state law claims for assault and battery as to defendants Jourdan, Hill, and

25   Bassett.  Defendants' motion for summary judgment came on for hearing October 5, 2017.

26   Plaintiff appeared pro se.  Defendants appeared through counsel, Kevin J. Dehoff.  As set forth

27   below, defendants' motion for summary judgment should be granted in part and denied in part.

28   ////

II.  Background

On November 24, 2015, plaintiff filed an unverified third amended civil rights complaint alleging unlawful detention, excessive force, arrest without probable cause, and false imprisonment, all under 42 U.S.C. § 1983, alleging seven new state law claims, and purportedly adding three new defendants:  City of Corning; County of Tehama; and the Corning Super 8 Motel, based on events that occurred on December 12, 2013.  The undersigned summarized the pleading on August 19, 2016, and will not repeat the unverified allegations here.  (ECF No. 38 at 3-4.)  Plaintiff seeks compensatory, special and exemplary damages, as well as an order directing defendants to set forth policies and procedures as may be necessary with respect to the use of force and the use of a Taser.  (ECF No. 28.)

Defendants moved to dismiss.  On August 19, 2016, the undersigned recommended that plaintiff's state law claims against the City of Corning, County of Tehama, and the Corning Super 8 Motel, and the state law claims for negligence and the intentional infliction of emotional distress against defendants Jourdan, Hill, Bassett, and Fears be dismissed, and plaintiff's state law claims for assault and battery against defendant Fears be dismissed for failure to state a claim, and the remainder of the motion to dismiss be denied.  (ECF No. 38.)  On September 20, 2016, the district court adopted the findings and recommendations in full.  (ECF No. 43.)

III.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's

case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

III. Evidentiary Objections

    A. Defendants' Request for Judicial Notice

Defendants ask the court to take judicial notice of the criminal complaint filed against plaintiff in People v. Hoffman, No. NCR90445 (Tehama County) on January 17, 2014. (ECF No. 68-5 at 1-4.)

The court may take judicial notice of facts that are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986). Proper subjects of judicial notice include "court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004); Fed. R. Evid. 201(b)(2). However, if an exhibit is irrelevant or unnecessary to deciding the matters at issue, a request for judicial notice may be denied. See

4

1  <u>Adriana Intern. Corp. v. Thoeren</u>, 913 F.2d 1406, 1410 n. 2 (9th Cir. 1990);<u>Thompson v.</u>

2  <u>DeLallo's Italian Foods, Inc.</u>, 63 F.Supp.3d 1200, 1205 n.4 (E.D. Cal. 2014).

3      Here, the charges brought against plaintiff in Tehama County are relevant to the resolution

4  of this action, and judicial notice is appropriate for court records.  Defendants' request is granted.

5      B.  <u>Plaintiff's Request for Judicial Notice</u>

6      Plaintiff requests that the court take judicial notice of various documents, including her

7  bank statement, medical records, letters, court filings, as well as some of her own writings.  (ECF

8  No. 73-2 at 1-4 (12 exhibits appended at ECF No. 73-2 at 5-55).)  Defendants object that most of

9  the attached exhibits are medical records and letters where the court cannot take judicial notice as

10 the documents are unauthenticated hearsay and potentially violate the Secondary Evidence Rule.

11 Specifically, defendants formally object to plaintiff's Exhibits 1 - 7, 8 (as to the letter from Berg

12 and Associates), 10 -12, as inappropriate for judicial notice.  (ECF No. 74 at 2.)  Defendants

13 concede that the court may take judicial notice of court filings contained in Exhibits 8 and 9, but

14 not plaintiff's legal conclusions concerning the documents.  Finally, defendants strongly object to

15 plaintiff's Exhibit 12 in which plaintiff apparently sought to make a citizen's arrest of the

16 independent witnesses in this case, and argue the exhibit "raises serious questions as to the

17 genuineness of any duplicated document submitted by plaintiff and is "outrageous, disturbing,

18 and potentially a threat to the safety of the witnesses as [plaintiff] knows their home addresses."

19 (ECF No. 74 at 3.)  Thus, unless independently verified, defendants also object to Exhibits 8 and

20 9 under Rules 1002 and 1003 of the Federal Rules of Evidence as issues exist concerning the

21 genuineness of the duplicate court records.  (ECF No. 74 at 3.)

22     Defendants' objections as to the impropriety of taking judicial notice of Exhibits 1 - 7, 8

23 (as to the letter from Berg and Associates), 10 -12 are sustained, and plaintiff's request to take

24 judicial notice of such exhibits is denied.  With regard to the court filings contained in Exhibits 8

25 and 9, review of such documents was not required to address the instant motion; therefore, the

26 court declines to take judicial notice of exhibits 8 and 9.  That said, certain of these exhibits are

27 relevant to the instant motion and, because such documents could be authenticated for use at trial,

28 the court has considered the following documents in connection with defendants' motion:

Exhibit 1:  plaintiff's bank statement reflecting a 12/16/13 checkcard debit for $60.49 for "1212 Super 8 Corning[,] Corning, CA."  (ECF No. 73-2 at 6.)

Exhibit 3:  medical records documenting plaintiff's injuries on December 12, 2013.  (ECF No. 73-2 at 12-17.)[1]

Exhibit 4:  medical bills documenting plaintiff's alleged damages incurred on December 12, 2013, $15,072.00.  (ECF No. 73-2 at 22.)

Exhibit 6, letter from neurologist Ravinder Singh, M.D., stating that plaintiff has been a patient since April 14, 2015, for post-traumatic headache and memory deficits due to traumatic brain injury without loss of consciousness from a physical assault on December 12, 2013.  (ECF No. 73-2 at 31.)

Exhibit 7:  April 20, 2017 letter from Dr. Patricia Brodhead, Psychiatrist, Edelman West Side Mental Health Clinic, Los Angeles County Mental Health, who has been treating plaintiff since March, 2015, for schizoaffective disorder, a severe and persistent mental illness.  (ECF No. 73-2 at 33.)

Exhibit 10:  June 2, 2015 letter from William B. Stubbeman, M.D., who treated plaintiff for schizoaffective disorder from 1999 - 2011.  (ECF No. 73-2 at 48.)

C.  Plaintiff's Declaration

Defendants object to plaintiff's three page declaration because it contains no facts, just a list of six separate documents appended to the declaration.  Defendants' objection is sustained because plaintiff's three page declaration signed September 18, 2017, does not contain any factual allegations, and therefore is not pertinent to the resolution of the motion.

////

////

---

[1] The pictures of plaintiff with a black eye, a skeletal portion of a body, and an unidentified body part are not considered because they are not labeled or verified.  (ECF No. 73-2 at 18-20.)  As to Exhibit 5, plaintiff claims she had to wait six months for surgery to break her nose again because her breathing was impaired, and appends medical records and bills, allegedly for follow-up surgery in June of 2104.  (ECF No. 73-2 at 3, 24-26.)  However, her statement is not verified, and she provides no medical evidence tying this surgery to the 2013 incident, and the bills are not itemized.  (ECF No. 73-2 at 27-29.)  Thus, all of these exhibits were not considered.

1          1. <u>Exhibits to Plaintiff's Declaration</u>

2              a. <u>Plaintiff's Affidavit of Special Appearance</u>

3          Appended as Exhibit A, is plaintiff's affidavit, subscribed to and sworn before a notary

4   public on June 30, 2014.  This affidavit provides plaintiff's version of what took place on

5   December 12, 2013, and is admissible.  To avoid confusion with plaintiff's declaration, the

6   undersigned refers to plaintiff's "affidavit."  (ECF No. 73-3 at 5-8.)

7              b. <u>Plaintiff's "Statement" and Handwritten Drawings</u>

8          Plaintiff appends her "statement," and handwritten drawings as exhibits B and C.

9   However, as argued by defendants, her statement and the drawings are not signed, verified or

10  accompanied by a declaration, attesting that the statement and drawings are true and correct under

11  penalty of perjury.  28 U.S.C. § 1746.  None of these documents were considered by the

12  undersigned in addressing defendants' motion.

13             c. <u>Plaintiff's Critique of Deposition Testimony</u>

14         As exhibits D & E, plaintiff provides unsigned, typewritten comments about the

15  deposition testimony of witnesses Ortiz and Aguilar, and appends portions from the Ortiz

16  deposition transcript.  (ECF No. 73-3 at 53-96.)  Defendants object under Rule 401 of the Federal

17  Rules of Evidence as the excerpts are not relevant to the summary judgment motion, 28 U.S.C.

18  § 1746, and Rules 801 and 802 of the Federal Rules of Evidence.  Plaintiff's typewritten

19  comments are not signed or verified, and therefore defendants' objections are sustained, and the

20  typewritten comments have not been considered in addressing the motion.  However, complete

21  transcripts of the depositions of both Ortiz and Aguilar have been lodged with the court and

22  reviewed in connection with the instant motion.

23             d. <u>Plaintiff's Critique of Police Report & Police Report</u>

24         Exhibit E is plaintiff's unsigned, typewritten comments concerning the police report, as

25  well as the Corning Police Department police report concerning the December 12, 2013 incident.

26  (ECF No. 73-3 at 98-101; 102-12 (police report).)  Defendants object to plaintiff's comments

27  under Rules 401, 801 and 802 of the Federal Rules of Evidence, 28 U.S.C. § 1746.  (ECF No. 74

28  at 3-4.)  Because plaintiff's typewritten comments are not signed or verified, defendants'

objection is sustained, and such comments have not been considered by the court.

On the other hand, the first ten pages of the police report are admissible as a business record because they were prepared by the officers involved in the incident, made in the ordinary course of business, appear trustworthy, and were prepared the very day of the incident herein, December 12, 2013, and thus were contemporaneously recorded.[2] (ECF No. 73-3 at 102-10.) In addition, the police report bears the stamp of the Corning Police Department, as well as an Exhibit A sticker from the Ortiz deposition,[3] and thus, it appears that a foundation for the admission of the first ten pages of the police report could be laid at trial. Therefore, the undersigned has reviewed and considered the first ten pages of the police report in addressing defendants' motion. The last two pages of the report were prepared almost four months after the incident and purportedly record the statements of a person who was not a witness to the incident at issue here. Therefore, the last two pages were not considered by the undersigned.

IV. Facts[4]

1. On or about December 12, 2013, in the early morning, plaintiff checked into the Super 8 Motel in Corning, California.

2. Plaintiff stayed in a motel room at the Super 8 Motel (hereafter "motel") during the morning of December 12, 2013.

3. On December 12, 2013, while plaintiff was in the motel room, front desk clerk Karen Ortiz called her supervisor, Rosa Aguilar, from the motel office, to report that plaintiff's "credit card did not go through," that the card was declined.[5] (Aguilar Dep. at 55-56.)

---

[2] A proponent of admitting a business record must establish, through "the testimony of the custodian of the records or other qualified witness," United States v. Miller, 771 F.2d 1219, 1237 (9th Cir. 1985), that the business records were: "(1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy, with neither the source of the information nor method or circumstances of preparation indicating a lack of trustworthiness." United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) (citing Miller, 771 F.2d at 1237).

[3] Defendants provided the deposition transcript, but no exhibits were appended.

[4] Unless otherwise indicated, the following facts are found undisputed for the pending motion.

[5] Plaintiff disputes this fact, citing to her printed bank statement that reflects a $60.49 charge on a

8

4. Aguilar told Ortiz, "We need to get [plaintiff] off the property immediately. If she's not going to pay, she has to go." (Aguilar Dep. at 56.) Aguilar told Ortiz to call the police to remove plaintiff from the property. (Aguilar Dep. at 56-57.)

5. Aguilar testified that during prior incidents where Corning Police Department officers responded to the motel, the encounters between the officers and motel staff were professional.[6] (Aguilar Dep. at 23-24.)

6. Ortiz called the Corning Police Department, and their officers arrived at the motel. Ortiz told the officers that plaintiff's card had been declined and she had not paid for the room. (Ortiz Dep. at 60.) Ortiz was present when defendant Bassett knocked on plaintiff's motel door and identified himself as a police officer. (Ortiz Dep. at 61.) Ortiz testified that defendant Bassett tried for ten or fifteen minutes to get plaintiff to open the door, but she would not. (Id. at 61-62, 63.)

7. Officer Bassett indicated to Ortiz that he did not want to force his way into the room and he hoped plaintiff would come out of the room voluntarily so the Corning Police Officers left the motel.[7] (Ortiz Dep. at 61.)

8. Later on December 12, 2013, the Corning police officers returned to the motel and were contacted by Aguilar. Aguilar told the officers she wanted plaintiff out of the room immediately because she had not paid for the room.[8] (Aguilar Dep. at 33-34.)

---

"checkcard" dated "12/16/13." (ECF No. 73-2 at 6.) However, it is undisputed that at the time this phone call was made, plaintiff was in the motel room and Ortiz was back in the hotel calling her supervisor. Thus, plaintiff was not present during the phone call and cannot dispute what transpired during the conversation. In addition, the alleged bank statement does not reflect a charge on December 12, 2013, the date at issue here, but rather December 16, 2013.

[6] Plaintiff disputes the defendants' professionalism on December 12, 2013. (ECF No. 73-4 at 3.)

[7] Plaintiff disputes this fact, but does not claim she could hear the conversation between Bassett and Ortiz. (ECF No. 73-4 at 3.) Ortiz testified that when Bassett first approached plaintiff's motel room door, Ortiz remained at least eight feet away from the door. (Ortiz Dep. at 63.) Plaintiff confirms there was a knock on the door, and that "a male identified himself as police, " and the man at the door, "left saying that 'we will be back at 5,'" confirming Bassett left after the initial attempt to get plaintiff to open the motel room door. (ECF No. 73-3 at 6; 73-4 at 3.)

[8] Plaintiff disputes that Aguilar stated she wanted plaintiff out of the room because plaintiff had

9

9. The Corning police officers asked Aguilar if she made any attempt to contact plaintiff. Aguilar related that the phone was not working and plaintiff had made no attempt to pay for her stay at the motel.[9] (Aguilar Dep. at 33-34; 74.)

10. Aguilar told the Corning Police Department that she wanted them to force entry into the room and escort plaintiff off the property. The officers advised Aguilar that if they forced entry into the room, they were not responsible for any damage to the door. Aguilar responded that she did not care about the damage to the door, but she was concerned for the safety of the other people in the motel due to plaintiff's previous actions. (Aguilar Dep. at 76.)

11. Aguilar initially told the police officers to break the window if necessary to get plaintiff out of the room, but the officers refused because if plaintiff was on the other side, the glass could harm her. (Aguilar Dep. at 38.)

12. Aguilar witnessed the Corning police officers knock on plaintiff's motel door and state in a calm, professional manner that they were the police.[10] Plaintiff did not exit the room. (Aguilar Dep. at 45-46.)

13. The Corning Police Officers entry into the room through the door was hampered. (Aguilar Dep. at 46-47; 48.) Aguilar testified that plaintiff had pushed furniture next to the door, including a hotel chair. (Id.) Plaintiff declares that when someone attempted to open the motel door, she "quickly placed a chair under the doorknob." (ECF No. 73-3 at 6, ¶17.) Plaintiff had previously engaged the safety latch. (ECF No. 73-4 at 6.)

14. What occurred in the motel room is disputed, but it is undisputed that plaintiff was not armed.

not paid, because such statement contradicts motel policy as Aguilar stated in her deposition. (ECF No. 73-4 at 4.) Plaintiff did not provide a page number from the deposition, and her cited exhibits are not pertinent to this fact. In addition, plaintiff was in the motel room and was not present during the conversation between Aguilar and the officers.

[9] Again, despite plaintiff's purported objection, it is undisputed that plaintiff was not present.

[10] Plaintiff disputes and denies the officers knocked on the door in a calm and professional manner, "because Hoffmann did not hear anything." (ECF No. 73-4 at 6.) However, plaintiff does not include her claim that she did not hear anything in her affidavit. (ECF No. 73-3 at 5-6.)

15. After the Corning police officers restrained plaintiff in the motel room, they took her into custody. (Aguilar Dep. at 58, 62, 63.)

16. On January 17, 2014, a criminal complaint was filed against plaintiff in the Tehama County Superior Court for her conduct occurring on December 12, 2013. (ECF No. 68-5 at 4-5.) The counts included, *inter alia*, misdemeanor charges for defrauding an innkeeper by non-payment, in violation of California Penal Code section 537(a)(1), and trespass of a hotel/motel, in violation of California Penal Code section 602(s). (ECF No. 68-5 at 4.)

17. Checkout from the motel is 11:00 a.m. (Aguilar Dep. at 25-26.)

18. Plaintiff adduced evidence that she suffers from schizoaffective disorder, a serious mental illness, but it is unknown whether defendant officers at the scene were aware that plaintiff was mentally ill or emotionally disturbed.

V. Plaintiff's § 1983 Claims

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). To prevail on a Section 1983 claim, plaintiff must show that the alleged conduct both occurred "under color of state law" and deprived plaintiff of a constitutional or federal statutory right. Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003).

Plaintiff pleads four § 1983 claims predicated on the violation of her rights under the Fourth Amendment. There is no dispute that the defendant officers were acting under color of law; thus, the only question is whether they are entitled to summary judgment because there is no dispute of fact with respect to the entry, arrest, or use of force, or, even if there is, whether they are entitled to qualified immunity.

A. Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. To invoke Fourth Amendment protections, one must have a reasonable expectation of privacy in the place that is invaded. Minnesota v. Carter, 525 U.S. 83, 88 (1998). "The Fourth Amendment protection against unreasonable searches and seizures is not limited to one's home,

11

but also extends to such places as hotel or motel rooms." United States v. Cormier, 220 F.3d 1103, 1108-09 (9th Cir. 2000); United States v. Young, 573 F.3d 711, 715 (9th Cir. 2009) (defendant had reasonable expectation of privacy in his hotel room). In order to benefit from Fourth Amendment protections, an individual must "demonstrate a subjective expectation that his activities would be private, and he must show that his expectation was 'one that society is prepared to recognize as reasonable.'" United States v. Nerber, 222 F.3d 597, 599 (9th Cir. 2000) (quoting Bond v. United States, 529 U.S. 334, 338 (2000)).

A defendant may rebut this presumption by satisfying one of three exceptions: (1) consent, (2) exigency, or (3) emergency. Espinosa v. City & Cnty. of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010).

> The absence of a right to exclude others from access to a situs is an important factor militating against a legitimate expectation of privacy. See Rawlings v. Kentucky, 448 U.S. 98, 105 . . . (1980). Consequently, we have held that if a hotel guest's rental period has expired, or has been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room. See, e.g., United States v. Haddad, 558 F.2d 968, 975 (9th Cir. 1977) (observing that "a justified ejection is no different than a termination of the rental period, when the guest has completely lost the right to use the room and any privacy associated with it") (citations and internal quotation marks omitted).

United States v. Bautista, 362 F.3d 584, 589 (9th Cir. 2004). "In Bautista, [the Ninth Circuit] explained that whether a hotel guest retains a reasonable expectation of privacy in [the] room turns on 'whether or not management had justifiably terminated [the patron's] control of the room through private acts of dominion.'" United States v. Young, 573 F.3d at 716, quoting Bautista, 362 F.3d at 590; also citing United States v. Dorais, 241 F.3d 1124, 1127-28 (9th Cir. 2001) (holding that a hotel guest did not have a reasonable expectation of privacy after staff had taken "affirmative steps" to evict him). Even if a patron procures the room by fraud, the patron's protected Fourth Amendment expectation of privacy is not finally extinguished until the motel justifiably takes affirmative steps to repossess the room. United States v. Cunag, 386 F.3d 888, 895 (9th Cir. 2004).

Here, plaintiff argues that the officers entered her room without a warrant, but does not argue that she had a reasonable expectation of privacy in the motel room. Such argument would

be unavailing in light of her affidavit confirming that the motel clerk told plaintiff early in the morning of December 12, 2013, that there was a problem with her credit card, and that before check-out, the motel clerk called plaintiff to inform her "that only a cash payment would be accepted for the room." (ECF No. 73-3 at 5.) Plaintiff confirmed that the clerk declined plaintiff's request that the clerk come to plaintiff's room to get a credit card. (Id.) Such statements make clear that plaintiff would have to pay cash at the office.

Moreover, both Ortiz and Aguilar testified that they knocked on plaintiff's door in an effort to get plaintiff to pay or leave. (Ortiz Dep. at 42, 49, 52; Aguilar Dep. at 34-35.) Ortiz testified that she told plaintiff her credit card was declined, that she had to get payment for the room last night and tonight, "if you're staying, or you have to leave." (Ortiz Dep. at 52.) Aguilar testified that checkout is at 11:00 a.m. (Aguilar Dep. at 25-26.) Thus, both Ortiz and Aguilar took affirmative steps to repossess the room and to assert dominion and control over the room in light of plaintiff's declined credit card payment.

It is also undisputed that Ortiz first called the Corning Police Department in an effort to get plaintiff removed from the room. Plaintiff's affidavit confirms that a man knocked on her door and identified himself as police; plaintiff declined to answer the door, and subsequently took her phone off the hook. (ECF No. 73-3 at 6.) In her affidavit, plaintiff declares that the man at her door identified himself as police "early afternoon." (ECF No. 73-3 at 6.) Thus, it is undisputed that police officers first approached plaintiff's motel room after checkout. Ortiz testified that defendants Bassett and Hill tried for 10 or 15 minutes to get plaintiff to open the door, without success. (Ortiz Dep. at 61-62.) Plaintiff admits she declined to answer the door. (ECF No. 73-3 at 6.) Thus, Ortiz took affirmative steps by involving the police in an effort to regain dominion and control over the room. Similarly, Aguilar took affirmative steps to regain dominion and control over the room by calling the police and asking them to force entry into the room and escort plaintiff off the property.

Because plaintiff did not check out at 11:00 a.m. on December 12, 2013, she lost her right to privacy and to exclude others from the room at that time. But, even assuming, *arguendo*, that plaintiff's credit card payment of $60.40, albeit initially declined, was sufficient to provide

plaintiff a legitimate right of privacy in the room until checkout on December 12, 2013, her

failure to check out at 11:00 a.m., or to pay cash to rent the room for another day, lawfully

terminated her rental of the room, depriving her of a legitimate expectation of privacy in the

room. Therefore, Aguilar had authority to consent to defendants' entry into the room, and

defendants' entry into the room was authorized.

B. Alleged False Arrest/False Imprisonment[11]

Defendants contend they had probable cause to arrest plaintiff on multiple counts,

including California Penal Code sections 537(a)(1)[12] and 602(s),[13] making the false arrest/false

imprisonment combined cause of action susceptible to summary judgment on behalf of all four

defendants. Defendant officers were informed by motel staff on two separate occasions that

---

[11] Plaintiff included allegations pertinent to both false arrest and false imprisonment, so the undersigned required the parties to consider her third and fourth causes of action together as one claim for false arrest/false imprisonment. (ECF No. 38 at 17.) Under California law, false arrest is not a separate tort, but a subcategory of false imprisonment. Watts v. Cty. of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001) (citation omitted); see also Collins v. San Francisco, 50 Cal. App. 3rd 671, 673 (1975) ("false arrest is but one way of committing false imprisonment").

[12] "Any person who obtains any food, fuel, services, or accommodations at a hotel, inn, . . . motel . . . without paying therefor, with intent to defraud the proprietor or manager thereof, or who obtains credit at an hotel, inn, . . . motel . . . by the use of any false pretense, or who, after obtaining credit, food, fuel, services, or accommodations, at an hotel, inn, . . . motel . . . , absconds, or surreptitiously, or by force, menace, or threats, removes any part of his or her baggage therefrom with the intent not to pay for his or her food or accommodations is guilty of a public offense punishable as follows:

(1) If the value of the credit, food, fuel, services, or accommodations is nine hundred fifty dollars ($950) or less, by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the county jail for a term not exceeding six months, or both."

Cal. Penal Code section 537(a)(1).

[13] "Except as provided in subdivisions (u), (v), and (x), and Section 602.8, every person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor:

(s) Refusing or failing to leave a hotel or motel, where he or she has obtained accommodations and has refused to pay for those accommodations, upon request of the proprietor or manager."

Cal. Penal Code section 602(s).

1  plaintiff had not paid for the motel room.  When the police officers knocked on plaintiff's motel

2  room door, and announced who they were, plaintiff did not come out.  The motel manager

3  Aguilar told the officers she wanted them to force entry into the room, and that they would not be

4  responsible for any damage to the door.  Aguilar also informed the officers that she was

5  concerned for the safety of the people at the motel due to plaintiff's previous actions.

6  Defendants contend that the information about plaintiff's refusal to pay for the room came

7  from two separate motel employees, and the officers had no reason to doubt the veracity of the

8  motel employees based on their interaction.  Corning police officers had responded to incidents at

9  the motel before, and their encounters with motel staff were always professional.  Thus,

10  defendants argue that the facts provided to the officers were reasonably trustworthy information

11  that plaintiff had violated both sections 537(a)(1) and 602(s).  When plaintiff refused to exit the

12  motel room after the officers knocked on her motel room door in a professional manner,

13  announcing their presence, this further increased the probability that plaintiff was both trespassing

14  and defrauding an inn keeper.  Based upon the information known to defendants at that time,

15  probable cause existed for plaintiff's arrest, negating both the unlawful detention and false

16  arrest/false imprisonment causes of action.

17  Plaintiff does not specifically address the issue of false arrest, but argues that defendants

18  did not have a warrant to enter the room, and there was no need to enter the room because the

19  alleged nonpayment was a "misdemeanor, not a law so it does not constitute a crime," but argues

20  she had paid for the room in any event.  (ECF No. 73-1 at 14.)

21  In reply, defendants argue that because plaintiff failed to argue such issues, she has tacitly

22  agreed that there are no triable issues of fact precluding summary judgment.  Also, her effort to

23  dispute defendants' undisputed material facts related to the false arrest claims, is unavailing

24  because plaintiff was not present during the conversations between motel staff and the police.

25  Moreover, plaintiff's additional facts do not create a triable issue of fact, and even if plaintiff was

26  a paying guest, such fact does not create a triable issue of fact as to what the motel staff told the

27  defendants.  Because defendants adduced evidence that the officers gathered trustworthy

28  information from motel staff on two separate occasions, probable cause existed for the arrest.

The Fourth Amendment requires that an arrest be supported by probable cause.  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (held that custodial arrest for a minor motor vehicle violation did not violate the Fourth Amendment ban against unreasonable seizures); Michigan v. Summers, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it).  An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime.  Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010); Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004); Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002).  For probable cause to exist, it is not necessary that the crime actually have occurred.  See Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007) (federal standards are "whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [subject] had committed or was committing an offense.").  The Supreme Court has held that warrantless arrests for crimes committed in the presence of the arresting officer are reasonable under the Fourth Amendment, even though the offense may not be an arrestable offense under state law.  Virginia v. Moore, 553 U.S. 164 (2008) (upholding arrest for driving with a suspended license).  However, in California, arrest for resisting arrest is not lawful if the underlying arrest was without probable cause.  Blankenhorn, 485 F.3d at 472.

A criminal complaint was filed against plaintiff, charging her with, *inter alia*, defrauding an innkeeper by non-payment, and trespass of a hotel/motel.  California Penal Code section 602(s) states:

> Refusing or failing to leave a hotel or motel, where he or she has obtained accommodations and has refused to pay for those accommodations, upon request of the proprietor or manager, and the occupancy is exempt, pursuant to subdivision (b) of Section 1940 of the Civil Code, from Chapter 2 (commencing with Section 1940) of Title 5 of Part 4 of Division 3 of the Civil Code. For purposes of this subdivision, occupancy at a hotel or motel for a continuous period of 30 days or less shall, in the absence of a written agreement to the contrary, or other written evidence of a periodic tenancy of indefinite duration, be exempt from Chapter 2 (commencing with Section 1940) of Title 5 of Part 4 of Division 3

16

1  of the Civil Code.

2  Cal. Penal Code § 602.

3  On the evidence submitted, no reasonable jury could find in plaintiff's favor on her claim

4  that she was subjected to false arrest. It is undisputed that Ortiz and Aguilar told the police that

5  plaintiff had failed to pay for the motel room, and defendants had no reason to doubt the veracity

6  of either motel employee. When the officer initially approached her motel room door and

7  knocked, it is undisputed that plaintiff declined to open the door despite her concession in her

8  affidavit that the man at the door identified himself as a police officer. Plaintiff's failure to exit

9  the motel room, after police knocked on her door and announced their presence, further supported

10  their belief that plaintiff was trespassing and defrauding an inn keeper. Plaintiff concedes she

11  subsequently took her phone off the hook (ECF No. 73-3 at 6), depriving motel staff and the

12  police of an opportunity to call her about the matter, and further supporting police officers' belief

13  that she was defrauding an inn keeper and trespassing. Under these circumstances, a reasonably

14  prudent person could conclude there was a fair probability that the defendant had committed and

15  was committing a crime, even though it was a misdemeanor. Defendants are entitled to summary

16  judgment on this claim.

17  C. Alleged Unlawful Detention

18  Defendants argue that their motion should be granted as to unlawful detention because

19  defendants had reasonable suspicion that plaintiff had violated both California Penal Code

20  sections 537(a)(1) and 602(s). Defendant officers were informed by the motel clerk Ortiz that

21  plaintiff's credit/debit card was declined, and plaintiff had not paid for the motel room on

22  December 12, 2013. The officers did not want to force entry into the room and left hoping

23  plaintiff would voluntarily come out. When the police officers returned later that afternoon, the

24  motel supervisor Aguilar reiterated to them that plaintiff had not paid for her room and the motel

25  wanted her out immediately. When the officers asked Aguilar if she had attempted to contact

26  plaintiff, Aguilar responded that the phone to plaintiff's room was not working, and that plaintiff

27  had made no attempt to pay for her stay at the motel. Defendants contend that based upon the

28  information provided to the officers by the motel staff on two separate occasions, it appeared that

17

plaintiff had not paid for her room, and was avoiding motel management because the phone to her room was not working. Thus, reasonable suspicion existed that plaintiff was in violation of sections 637(a)(1) and 602(s) based on the facts known to the officers.

In her opposition, plaintiff does not address the issue of unlawful detention.

In reply, defendants argue that because plaintiff failed to argue the issue unlawful detention, she has tacitly agreed that there are no triable issues of fact precluding summary judgment. (ECF No. 74 at 5.) Any efforts to dispute defendants' undisputed material facts related to the detention claim fail because plaintiff was not present during the conversations between motel staff and the police. Moreover, plaintiff's additional facts do not create a triable issue of fact as to the unlawful detention claim, and even if plaintiff was a paying guest, such fact does not create a triable issue of fact as to what the motel staff told the defendants. Because defendants adduced evidence that the officers gathered trustworthy information from motel staff on two separate occasions, reasonable suspicion existed for the detention. (ECF No. 74 at 6.)

"The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons . . . that fall short of traditional arrest." United States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005) (internal quotations and external citations omitted). "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotations and citations omitted). Reasonable suspicion means the officer must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968); see also United States v. Cortez, 449 U.S. 411, 417 (1981) (holding that "the totality of the circumstances -- the whole picture -- must be taken into account" when determining if an officer had reasonable suspicion to perform an investigatory stop).

As discussed above, defendants had probable cause to arrest plaintiff. The same facts demonstrating probable cause also support a finding that defendants had a reasonable suspicion to

detain plaintiff based on her alleged violation of California Penal Code sections 537(a)(1), defrauding an inn keeper, and 602(s) trespassing.  Defendants are entitled to summary judgment on this claim.

### D.  Alleged Excessive Force

#### 1.  The Parties' Positions

##### a.  Defendants' Motion

Defendants argue the following:  The Fourth Amendment excessive force claim alleged against defendants Jourdan Hill, and Bassett fails on summary judgment because the level of force used was reasonable under the circumstances.  Defendants used the minimum amount of force possible to enter the motel room.  The officers initially left the scene hoping that plaintiff would leave the room on her own accord so that a forced entry would not be necessary.  When the officers returned, they followed Aguilar's request to force entry into the room, but declined to break the window to gain entry to avoid injuring plaintiff.  Aguilar stressed she was concerned about the safety of other guests due to plaintiff's prior actions, which was why she wanted plaintiff removed.  Thus, the safety of others was at issue under the circumstances.

Once the door was forced open, defendants encountered a barricade of furniture, highlighting plaintiff's resistance and possible desire to evade the police.  Defendants' initial efforts, using calm voice commands to announce their presence, to induce plaintiff to leave the room were unsuccessful.  After pushing through the furniture barrier, defendants allegedly encountered plaintiff, who charged the officers as they entered and started swinging at their faces.  Plaintiff allegedly undertook this aggressive attack before the officers made any overt movements toward her.  After striking an officer in the face, plaintiff reached for an officer's gun, which was in his holster.  By this point, plaintiff had committed multiple felonies including resisting and battery on an officer.  Cal. Penal Code sections 69, 243.  The severity of the crimes had evolved into felonies, and plaintiff was actively resisting the officers through her use of force, and endangered the officers by reaching for an officer's firearm.

Under these circumstances, it was reasonable for the defendants to go "hands on," to make an arrest, both for their own safety and the safety of the other motel guests.  Given the proximity

of plaintiff's hands near an officer's gun, and her attempt to grab the firearm, defendants may have been justified in using deadly force. But they refrained from using deadly force, choosing instead to use a lesser degree of force to restrain plaintiff and defend themselves. Thus, defendants' contend that the force used by defendants Jourdan, Hill, and Bassett was reasonable under the circumstances, and plaintiff's excessive force claim is unavailing.

### b. Plaintiff's Opposition

Essentially, plaintiff contends that there are material disputes of fact that preclude entry of summary judgment, and argues the following: Defendants confronted her knowing she was fearful and not feeling well, "possibly because she was in gestation with morning sickness symptoms," and they used highly aggressive tactics, resorting to increasingly brutal and violent tactics. (ECF No. 73-1 at 10.) Defendants Jourdan, Bassett and Hill used the element of surprise to gain a tactical advantage rather than addressing her in calm tones without giving commands. She disputes that the officers forced entry with service weapons drawn as stated in their police reports. (Id.) Plaintiff reacted with shock and disbelief, and defendant Jourdan punched plaintiff in the face with his closed fist and then tortured her with a Taser to the ground. Defendant Jourdan jumped on top of her, after which defendant Bassett jumped on top of Jourdan, and defendant Hill jumped on top of plaintiff. Defendants escalated the matter, causing her long term injuries, including severe fractures to her left eye and nose, dislocated neck and jaw, taser scars to torso, traumatic brain injury, and psychological injury. (ECF No. 73-1 at 10-11.) Defendants did not have a warrant to enter the room, she was not armed, and did not act aggressively toward "anyone or assault[] defendant Jourdan," and defendants Jourdan and Bassett, trained professionals, were considerably larger and stronger than plaintiff. (Id.) There was time for the officers to respond tactically and avoid any direct physical contact with plaintiff. Defendants Jourdan, Bassett and Hill were aggressive and violent, and upped the violence, not because they were in danger, but because plaintiff was "purportedly . . . being non-compliant, despite never being given an opportunity do to so." (ECF No. 73-1 at 15.) Plaintiff contends that there are "major discrepancies" in the depositions of Ortiz and Aguilar as compared with plaintiff's

deposition.[14]  (ECF No. 73-1 at 17.)

In addition, plaintiff argues that defendants failed in properly dealing with a mentally disturbed person.  There were numerous indicators of plaintiff's potential mental condition as described when Aguilar called dispatch and described the circumstances.  By forcing entry into the motel room, defendants provoked plaintiff into an aggressive response because of her fear for her own personal safety.  There was no need for forced entry because the alleged nonpayment was a "misdemeanor, not a law so it does not constitute a crime," but in any event, plaintiff produced her bank statement demonstrating she paid for the room.  (ECF No. 73-1 at 14.) Plaintiff's actions clearly demonstrated she "was experiencing physical illness [or] a mental crisis," and defendants "Jourdan, Bassett and Hill failed to follow the necessary tactics and techniques in dealing with mentally ill subjects."  (Id.)  Defendants failed to follow POST standards and training regarding officer contacts with subjects who have a mental illness, citing California Penal Code § 13515.25,[15] and Welfare and Institutions Code § 5150.[16]  The POST standards require officers dealing with mentally impaired persons to calm the situation by moving slowly, avoid physical contact, explain actions before acting, provide reassurance, and give the person time to calm down; communicate truthfully with the person and not make threats.  (ECF No. 73-1 at 15.)  Defendants Jourdan, Bassett and Hill acted contrary to training on how to handle mentally ill persons.

In addition, the circumstances did not support the use of such force because plaintiff was outweighed by defendants.  A 240 pound physically fit officer who delivers a closed fist blow to the nose of a 140 pound[17] woman poses a substantial risk of serious bodily injury, as does the use

---

[14]  Plaintiff did not provide a copy of her own deposition.

[15]  Section 13515.25 provides that the Commission on Peace Officer Standards and Training ("POST") shall create and keep updated a continuing education classroom training course relating to law enforcement interaction with persons with mental disabilities.  Id.

[16]  Section 5150 addresses the involuntary detention of dangerous or gravely disabled persons who pose a danger to others or to herself or himself, for assessment, evaluation, and crisis intervention for a period of up to 72 hours.  Id.

[17]  In her unverified opposition, plaintiff claims she was 140 pounds.  But the police report states

of a taser.  Such force must be justified by a strong governmental interest, absent here because the crime was not severe, and plaintiff had paid for the room.  (ECF No. 73-1 at 19, 23.)  Because officers blocked the only means of exiting the motel room, defendants' use of force could only be justified by plaintiff's actions during the confrontation.  (ECF No. 73-1 at 20.)  Plaintiff asserts that defendant Jourdan's multiple blows to plaintiff's face, the tasering, and then the subsequent dogpile by all defendants was excessive and not justified under the circumstances, including that there was no avenue for escape once the officers entered the motel room.  (ECF No. 73-1 at 20-21.)  But in any event, whether the officers' actions were justified is a factual question for a jury (ECF No. 73-1 at 21.)  Any suspicion that she was under the influence of drugs or that she was not complying with the officers' commands was not so serious as to compel the use of significant force or the Taser, especially in light of the absence of a strong governmental interest to justify it.  (ECF No. 73-1 at 23.)  Such use of force, given her mental breakdown and physical illness from morning sickness was "very provocative," and the opposite of what a well-trained officer would do under these circumstances.  Viewed in the light most favorable to plaintiff, she contends that defendants' use of force was not reasonable under the circumstances.

Plaintiff provided medical records supporting her mental illness and her claim of injuries resulting from the arrest, which include:  septal fracture, nasal bone fracture, and "orbital floor blowout fracture."  (ECF No. 73-2 at 13.)  She was transferred to Mercy emergency department to be seen by an oromaxillofacial surgeon.  (ECF No. 73-2 at 12.)

c. Defendants' Reply

In reply, defendants argue the following.  Plaintiff's affidavit does not create a triable issue of fact as to the excessive force claim because her factual assertions are not supported by admissible evidence.  For example, plaintiff's argument and case law concerning police officers' interactions with a known mentally disabled person, do not apply because defendants were not responding to a call under California Welfare & Institutions Code § 5150, but to the motel staff's complaint that plaintiff had not paid for her room and was trespassing.  Defendants did not

she weighed 130 pounds.

introduce evidence that they knew plaintiff was mentally disturbed prior to entering her motel room.

Also, in her affidavit, plaintiff admitted she heard a knock on the motel door, and that a male voice outside identified himself as the police; acknowledged she refused to open the door in response to the officer's request; and admits she took the motel room's phone off the hook, which made it impossible for either the police or motel staff to call the room. (ECF No. 74 at 7.) Later, plaintiff admits she kept the door from being opened by placing a motel chair under the doorknob. Such facts are also corroborated by the independent witness Aguilar.

Defendants note that plaintiff carefully described what took place in the motel room, admitting only that she jumped from the bed once the officers entered the room, and that an officer tried to grab plaintiff as she tried to escape him. Such latter assertion is not inconsistent with Aguilar's observations. In light of plaintiff's resistance, it was reasonable for them to use an intermediate level of force to subdue her, for their safety, and the safety of the other motel guests. Further, the absence of plaintiff's facts does not create a factual dispute as to whether plaintiff charged the officers or started swinging at their faces, or that she took this action before the officers made any overt movement toward her. Plaintiff's affidavit does not dispute that she struck one of the officers and that he defended himself by pushing her to the ground, or that she instantly got back up and reached for the officer's gun, which was in his holster. Rather, because plaintiff's affidavit does not refute the observations of Aguilar, an independent witness, and clearly omits key facts concerning what went on in the motel room to make it appear she was not the aggressor who could have killed an officer by reaching for his firearm, the deposition of the independent witness supplies the missing facts, and demonstrate that plaintiff's affidavit is a sham which does not create a triable dispute of material fact. Thus, defendants argue they are entitled to summary judgment on plaintiff's Fourth Amendment claims.

### 2. Legal Standards - Use of Force

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at

23

stake." Graham v. Connor, 490 U.S. 386, 395 (1989)[18] (internal quotations and citations omitted). "[P]roper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citation omitted). The "most important factor under Graham is whether the suspect posed an 'immediate threat' to the safety of the officers or others." George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013) (citation omitted).

The reasonableness inquiry is an objective one, and cannot rely on an officer's underlying intent, motive, or the reviewing court's hindsight. Graham, 490 U.S. at 396-97. Rather, reasonableness must be judged from the perspective of a reasonable police officer on the scene, and should take into account "the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 397. "Under the Fourth Amendment, police may use only such force during an arrest as is objectively reasonable under the circumstances." Su v. Cty. of Sacramento, 2010 WL 3238931, at *4 (E.D. Cal. Aug. 12, 2010) (citing Graham, 490 U.S. at 397).

On the other hand, "[w]hile the existence of less forceful options to achieve the governmental purpose is relevant, '[p]olice officers . . . are not required to use the least intrusive degree of force possible.'" Marquez v. City of Phoenix, 693 F.3d 1167, 1174 (9th Cir. 2012), as amended on denial of reh'g (Oct. 4, 2012) (citations omitted). Cf. Blankenhorn, 485 F.3d at 477 ("Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force."); Barber v. Santa Maria Police Dep't, 2010 WL 5559708, at *9 (C.D. Cal. Sept. 1, 2010) (during traffic stop, officers' use of three "distraction strikes" to plaintiff's face and neck were objectively reasonable given that the plaintiff was refusing to comply with the officers' verbal commands, was attempting to destroy evidence, and was physically resisting attempts to handcuff him.).

---

[18] The Supreme Court also overruled earlier cases that applied the Fourteenth Amendment Due Process Clause to claims of police brutality during arrests. Id.

"[T]he reasonableness of force used is ordinarily a question of fact for the jury." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (citation omitted). Because excessive force claims turn on the reasonableness of force used, motions for summary judgment as to such claims are "sparingly" granted. Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); see also Smith, 394 F.3d at 701 (noting that excessive force claims "almost always turn on a jury's credibility determinations").

### 3. Analysis

#### a. Use of Force to Enter Room

Plaintiff's argument that defendants used excessive force in breaking down the motel room fails because the evidence demonstrates that defendants had probable cause to arrest plaintiff, and it is undisputed that their efforts to knock and announce their presence, on two separate occasions, failed to get plaintiff to voluntarily open the door or leave the room. In addition, defendants refused to break the window due to concern for plaintiff's safety.

Once plaintiff's rental term for the room expired, and plaintiff lost her right of privacy in the room, the motel manager was authorized to take steps to evict plaintiff from the room based on her failure to pay, whether for the entire stay or just for the second night. The motel manager's request to ask the police officers to forcibly enter the room and escort plaintiff off the property gave the defendants consent to enter the room to arrest her. Thus, the defendants' use of force to enter the room was authorized and not unreasonable under the circumstances – especially in light of the fact that plaintiff admits they first attempted to use a key, but she had put on a safety chain and then barricaded the door with a chair.

#### b. Use of Force Once in the Room

Here, the alleged crime was not severe -- plaintiff's credit card was initially declined for the $60.49 charge for her initial stay, and she also had not paid to stay another night at the motel. Indeed, plaintiff checked in early in the morning of December 12, 2013, and it is undisputed that she was forcibly removed some time mid-afternoon that same day. Although plaintiff was not allowed to remain in a motel room for which she had not paid, such crime was not a serious or violent felony, but rather a misdemeanor.

25

It does not appear that plaintiff initially posed an immediate threat to the safety of the officers or others. Plaintiff was unarmed, and offered evidence that she was 5'5" and 130 pounds (ECF No. 73-3 at 102), and in a motel room with only one way out. Aguilar told officers she was concerned for the safety of the other motel guests, but defendants adduced no evidence that plaintiff was a threat to other motel guests; rather, plaintiff was ensconced in her motel room and refused to exit.

As to resisting, there are material disputes of fact and questions of credibility that preclude resolution of this issue. Defendants argue that plaintiff was resisting arrest, and submit the deposition testimony of witness Aguilar who testified that: plaintiff charged the officers and started swinging at their faces, before the officers made any overt movements toward plaintiff; plaintiff struck one of the officers, and he defended himself by pushing her onto the ground; plaintiff instantly got back up to her feet and reached for the officer's gun, which was in his holster. (Aguilar Dep. at 55-56; 58; 60.)

Conversely, in her affidavit, plaintiff declares that

> three men rushed into the room. [Plaintiff] jumped up from the bed in shock. An officer tried to grab [plaintiff] as she tried to escape him. . . . [Plaintiff] received multiple punches to the face. . . . An officer announced the intent to taser; [plaintiff] was then tasered and fell to the floor. Three officers jumped on [plaintiff].

(ECF No. 73-3 at 6.) Plaintiff argues that she was unarmed, physically and mentally ill, and in shock from the forcible entry into her room, and ultimately sustained very serious injuries to her face. The size of the three responding officers is not in the record. Plaintiff also contends that Aguilar's testimony is contradicted by some of Officer Bassett's statements in the police report. (ECF No. 73-4 at 8, citing ECF No. 73-3 at 108.)

Despite plaintiff's failure to describe in detail all that took place in the motel room, Aguilar's testimony does not track the statements contained in the police report. Both defendants Jourdan and Bassett claim their weapons were drawn when they entered the room, and neither wrote that plaintiff charged the officers. Rather, they wrote that plaintiff took a "fighting stance" with her arms up, and the officers approached her. (ECF No. 73-3 at 105, 108.) Both defendants Jourdan and Bassett deny that any of plaintiff's swings connected with an officer, and they took

26

plaintiff to the ground, after which the "distraction blows" and tasering occurred.  (Id.)  Aguilar does not identify which officer struck plaintiff's face; plaintiff claims it was defendant Jourdan; in the police report, defendant Bassett states he gave "distraction blows" to plaintiff's face. Similarly, Aguilar does not identify which defendant tasered plaintiff.

Also, having reviewed the record, questions remain as to Aguilar's ability to see what went on in the motel room.  In her deposition, she testified that a "bunch of furniture," including a table, refrigerator/microwave, and two to three chairs (Aguilar Dep. at 49-50), had blocked the door; indeed, defendant Bassett wrote that they "eventually made entry into the room," ostensibly due to the "furniture stacked against the door," and defendant Jordan "eventually made his way through the threshold of the door."  (ECF No. 73-3 at 108.)  Aguilar testified that she was four to five feet behind (id. at 50) the "only" officer in the room ("I don't recall any other officers") (id. at 53), yet later testified that other officers may have passed her to enter the room but she could not recall because she was "so focused on what was happening."  (Id. at 57.)  She testified she was not in the room, and not in the door frame, but was a little further out, perhaps a foot or two outside the door.  (Id. at 59.)  On the other hand, the police report suggests there were three officers in the room who could possibly block her view.  At this stage, the court does not resolve issues of credibility.

Moreover, defendants produced no declaration from defendant officers or from other law enforcement officers who might testify as to what a reasonable law enforcement officer on the scene would do under these circumstances.  In her affidavit, plaintiff concedes she tried to get away from an officer.  But even assuming plaintiff was resisting arrest, defendants adduce no evidence that a reasonable officer on the scene would choose to distract plaintiff by forcefully striking her in the face at least two times, and also to Taser her.  Thus, while it may have been appropriate, at this juncture it is unclear that a reasonable law enforcement officer would strike a 5'5" 130 pound unarmed woman multiple times in the face, blowing out her orbital socket, particularly when this took place in a motel room with only one exit, and where two officers were attempting to arrest her, with a third officer close enough for plaintiff to allegedly grab the officer's leg.

Further, "where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under <u>Graham</u>, the reasonableness of the force employed." <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1283 (9th Cir. 2001). Defendants contend that they submitted no evidence that defendants knew plaintiff was mentally ill. However, the record in this case reflects that plaintiff suffers from a mental illness. In their prior motion to dismiss, defendants confirmed that the criminal charges were later dismissed based on plaintiff's mental state. (ECF No. 35 at 3.)[19] In her deposition, witness Aguilar testified that "we can clearly tell she's mentally not right," and "She's obviously not all there in her head for [plaintiff] to do this [referring to plaintiff turning up the volume of the TV and refusing to open the door]." (Aguilar Dep. at 34, 36.)

Importantly, in defendant Bassett's police report statement, Bassett states that when the officers first went to plaintiff's motel room, Bassett was concerned about plaintiff's "medical condition." (ECF No. 73-3 at 107.) Bassett sent Hill to the office to get a room key. Bassett then used the key to open the door, but the security latch was engaged, so he could only open the door about two inches. Bassett saw a figure under the covers on the bed, but despite Bassett's calling plaintiff's name, there was no response or movement. Bassett told Hill that he believed plaintiff was "deceased or having some medical problems." (<u>Id.</u>) While Bassett and Hill were conversing, plaintiff slammed the door, began cursing, and stated they were "Nazi murder's, [sic]" and to "Fuck off." Plaintiff talked to Bassett for a short time, again stating they were not real cops, only dressed as cops, and continued to tell them to "Fuck off you Nazi's." (<u>Id.</u>) Such exchange, if heard by a reasonable law enforcement officer at the scene, might suggest that plaintiff was emotionally disturbed or suffering from a mental illness, and require a reasonable officer to handle the situation differently. But defendants provided no declarations from defendants

---

[19] "The criminal case was subsequently dismissed on June 15, 2015, after what appeared to be a review of several medical reports related to [plaintiff's] mental competence under Penal Code § 1026 [Plea of not guilty by reason of insanity] and Penal Code § 1368 [Mental competence of the defendant during pendency of the action.]" (ECF No. 35 at 3.) At the hearing on the instant motion, plaintiff stated that at the time of this incident, she was not taking her prescription for Risperdal, which may have been confirmed during her deposition. <u>See</u> ECF No. 55 at 10 (defendant's expert refers to plaintiff's deposition testimony).

addressing whether or not they were aware plaintiff suffered from mental illness, or from any law enforcement officer declaring that a reasonable law enforcement officer at the scene on December 12, 2013, knowing what defendants knew, would not conclude that plaintiff was emotionally disturbed or mentally ill. But Bassett's expressed concern for plaintiff's "medical condition," suggests Ortiz had shared information that plaintiff was not well. It is not clear what Ortiz and Aguilar told the officers on scene as to plaintiff's prior actions and whether these witnesses expressed to officers a belief that plaintiff was emotionally disturbed or mentally ill. Thus, the court is unable to find that the defendant officers were unaware of plaintiff's mental state.

On the other hand, plaintiff argues that defendants provoked her reaction by their sudden and forceful entry into her motel room, apparently relying on Alexander v. City and County of San Francisco, 29 F.3d 1355 (9th Cir. 1994), finding a law enforcement officer may be held responsible for an otherwise reasonable use of force where the officer intentionally or recklessly provoked a violent confrontation through a warrantless entry. However, earlier this year, the Supreme Court abrogated Billington v. Smith, 292 F.3d 1177 (9th Cir. 2002), and found that the provocation rule is incompatible with the Supreme Court's excessive force jurisprudence. County of Los Angeles, Calif. v. Mendez, 137 S. Ct. 1539 (May 30, 2017). Plaintiff's reliance on the provocation theory and Alexander is unavailing.

Therefore, the undersigned is unable to resolve the issue of the use of force because there are material disputes of fact as to what occurred in the motel room; it is unclear whether plaintiff was resisting, but if she was, whether her resistance warranted the amount of force used, and it is unclear what the officers at the scene knew, if anything, about plaintiff's mental state at the time. This court cannot say which version of the facts is to be believed or grant summary judgment in favor of the defendants because the Graham analysis cannot be properly decided due to disputes and absences of material facts as well as credibility issues. Accordingly, the court recommends that the motion for summary judgment by defendants Jourdan, Hill, and Bassett be denied on plaintiff's excessive force claim.

E. Alleged Failure to Protect

In the unverified operative pleading, plaintiff alleges that defendant Fears, also a Corning

Police Officer, stood by and failed to protect plaintiff in violation of her Fourth Amendment rights. Defendants contend that this sole claim against defendant Fears should be dismissed on summary judgment because there was no underlying excessive force used by the other defendants; without such constitutional violation, defendant Fears cannot be liable for failing to intercede. However, because there are material disputes of fact as to whether the force used by defendants Jourdan, Hill and Bassett was reasonable under the circumstances, defendant Fears' motion should also be denied.

VI. State Law Claims

Defendants contend that summary judgment should be granted as to the state law claims for assault and battery against defendants Hill, Bassett, and Jourdan because the 42 U.S.C. § 1983 causes of action are not sustainable. Plaintiff's assault and battery causes of action rest upon the same alleged facts as his claims under the Fourth Amendment; thus, because defendants did not violate plaintiff's Fourth Amendment rights, defendants argue that the officers cannot be liable for the state law torts. Plaintiff argues that the use of unreasonable force by defendants Jourdan, Bassett, and Hill, resulting in serious injuries, demonstrates they are guilty of the California tort of battery. (ECF No. 73-1 at 28.)

However, because the undersigned finds that a dispute of fact exists that is material to plaintiff's excessive force claim, defendants Jourdan Hill, and Bassett are not entitled to summary judgment on plaintiff's assault and battery claims. See Nelson v. City of Davis, 709 F.Supp.2d 978, 992 (E.D. Cal. 2010), aff'd, 685 F.3d 867 (9th Cir. 2012) ("Because the same standards apply to both state law assault and battery and [s]ection 1983 claims premised on constitutionally prohibited excessive force, the fact that plaintiff's 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive.")

VII. Qualified Immunity

Defendants argue that even assuming that a constitutional violation occurred, all four defendants are entitled to qualified immunity, because the law was clearly established concerning the factors needed for a detention, the laws of arrest, and the use of force in effecting the arrest under the Fourth Amendment. Nevertheless, defendants contend that a reasonable police officer

30

under the same circumstances would have believed his conduct was lawful with respect to the arrest/detention under both California Penal Code sections 537(a)(1) and 602(s) for the following reasons:

> (a) a Super 8 Motel clerk initially told the Corning police officers that Ms. Hoffmann's card had been declined and she had not paid for her room; (b) when the Corning police officers returned a second time to the motel, Super 8 Motel manager Rosa Aguilar told them again that Ms. Hoffmann had not paid for the room; (c) when asked whether the motel had attempted to make contact with Ms. Hoffmann, Ms. Aguilar responded that the phone was not working and Plaintiff had made no attempt to pay for the room; (d) the police officers had contacted the Super 8 Motel employees on other occasions and the interactions had always been professional; (e) the police officers knocked on the door the Super 8 Motel employees said was Ms. Hoffmann's motel room and announced their presence, but no one exited the room; and (f) when the police officers attempted to gain entry into the room, their entrance was hampered because furniture had been stacked against the door.

(ECF No. 68-1 at 21.) Moreover, defendants argue that a reasonable officer would also believe his conduct was lawful as to the use of force for the following reasons:

> (a) the police officers indicated to Ms. Ortiz at the first visit to the motel that they did not want to force their way into the room and hoped Plaintiff Hoffmann would come out of the room voluntarily; (b) when the Corning police officers returned a second time to the motel, Super 8 Motel manager Rosa Aguilar told them again that Ms. Hoffmann had not paid for the room; (c) when asked whether the motel had attempted to make contact with Ms. Hoffmann, Ms. Aguilar responded that the phone was not working and Plaintiff had made no attempt to pay for the room; (d) Ms. Aguilar told the Corning Police Department that she wanted them to force entry into the room and escort Ms. Hoffmann off the property (the Officers advised her that if they forced entry into the room, they were not responsible for any damage to the door), and Ms. Aguilar responded that she did not care about the damage to the door, but she was concerned for the safety of the other people in the motel due to Plaintiff's previous actions; (e) the police officers refused to gain entry into the motel room by breaking the window out of fear of injuring Ms. Hoffmann; (f) the police officers knocked on Ms. Hoffmann's motel room announcing their presence in a calm, professional manner, but no one exited the room; (g) police entry into the room was hampered because furniture was pushed against the door; (h) once the police officers gained entry into the room, Ms. Hoffmann charged them swinging without provocation; (i) Ms. Hoffmann struck one of the Officers and reached for his gun; and (j) the police officers used a lesser degree of force for their own safety and the safety of others without resorting to deadly force, despite the grab for the firearm.

(ECF No. 68-1 at 21.) Based on these facts, defendants contend that, even assuming a Fourth

Amendment violation occurred, a reasonable officer when confronted with these factual circumstances would believe his or her conduct was lawful, giving rise to qualified immunity.

In opposition, plaintiff argues that defendants are not entitled to qualified immunity because there are factual contradictions among the third party witnesses and the defendants' written statements in the police report as compared to plaintiff's serious injuries documented by her medical records, her bank statement showing she did pay for the motel room, and the dismissed criminal charges.[20]

In reply, defendants argue that they are entitled to qualified immunity because reasonable officers in their position would have believed that their conduct was lawful with respect to all of plaintiff's claims.

A. <u>Legal Standards:  Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson</u>, 555 U.S. at 231.  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" <u>Id.</u> (quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." <u>Pearson</u>, 555 U.S. at 232, citing <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)).  "First, a court must decide whether the facts that a plaintiff has alleged . . . make out

---

[20]  Plaintiff includes arguments concerning an alleged Fourteenth Amendment violation, and argues that the Corning Police Department is liable for ratifying defendants' allegedly wrongful acts.  However, plaintiff's Fourteenth Amendment claim was dismissed, and the Corning Police Department has not been served or appeared in this action.  (ECF No. 38 at 2 n.1.)  Thus, the court does not address such arguments.

a violation of a constitutional right." Id. (citing Saucier, 533 U.S. at 201). This prong of the inquiry "mirrors the substantive summary judgment decision on the merits." See Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). "If no constitutional right would have been violated were the allegations established," then the officer is entitled to qualified immunity. Saucier, 533 U.S. at 201. "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232. At step two, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "Qualified immunity is applicable unless the officials conduct violated a clearly established constitutional right." Pearson, 555 U.S. at 232 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

B. Qualified Immunity - Arrest and Detention

Here, because probable cause supported plaintiff's arrest and detention, there was no constitutional violation, and defendants are also entitled to qualified immunity on plaintiff's false arrest and unlawful detention claims.

C. Qualified Immunity - Use of Force

The undersigned has identified material disputes of fact as to whether defendants violated plaintiff's Fourth Amendment rights, precluding qualified immunity based on step one. Thus, the undersigned now turns to whether such rights were clearly established; that is, whether a reasonable officer would understand that his conduct was unlawful under the circumstances.

"[T]he use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985." Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993). Indeed, "[t]he principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well-established in 2001." Young v. Cty. of L.A., 655 F.3d 1156, 1168 (9th Cir. 2011).

33

Here, however, the factual disputes and credibility questions set forth above surrounding the use of force bar qualified immunity, because questions remain whether the use of force was reasonable, precluding this court from determining whether a reasonable officer would understand that his conduct was unlawful under the circumstances. Plaintiff, 130 pounds, was unarmed, alone in a motel room with only one exit, and approached by three separate officers. Factual issues remain as to whether she resisted and, if so, whether her alleged resistance warranted the use of significant force, or whether the officer was mistaken in striking plaintiff in the face multiple times or mistook the need for such force, and if so, whether such mistake or misapprehension was reasonable. Such factual issues also remain as to the use of the taser.

In sum, evaluating the evidence in plaintiff's favor, the undersigned cannot determine that defendants' use of force was objectively reasonable under the circumstances, so as to entitle them to qualified immunity. While defendants may be entitled to qualified immunity after the disputed material facts are resolved, the undersigned recommends the motion for qualified immunity be denied. Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."); Lolli v. Cty. of Orange, 351 F.3d 410, 421 (9th Cir. 2003); Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003) ("If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial."); Santos, 287 F.3d at 855 n.12 (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom") (internal citation omitted); Deorle v. Rutherford, 272 F.3d 1272 (2001) (officer not entitled to summary judgment when he shot an emotionally disturbed individual with a bean bag gun after having been on the scene for forty minutes, having five to ten minutes to observe him in close proximity, having the opportunity to consult with other officers on the scene, and there were no exigencies).

////

////

VIII.  Conclusion

In light of the above, this action should proceed solely on plaintiff's claims that defendants Bassett, Jourdan, and Hill allegedly used excessive force on December 12, 2013, in violation of the Fourth Amendment, whether defendant Fears failed to protect plaintiff during the incident, and whether defendants Bassett, Jourdan, and Hill committed assault and battery on plaintiff in violation of California state law.  The remaining claims should be dismissed.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Defendants' request for judicial notice (ECF No. 68-5) is granted;

2.  Plaintiff's request for judicial notice (ECF No. 73 at 2) is denied;

3.  Defendants' evidentiary objections are granted in part, and denied in part, as set forth above; and

IT IS RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 68) be granted in part and denied in part, as follows:

A.  Defendants be granted summary judgment on plaintiff's false arrest/false imprisonment and unlawful detention claims;

B.  In all other respects, the motion of defendants Bassett, Jourdan, Hill and Fears be denied; and

2.  This matter be remanded to the undersigned for further scheduling.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

////

////

////

parties are advised failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 11, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/hoff2736.msj